UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| JACQUELINE STERLING, | ) | Bkrtcy. Case No. 09-24206 |
| | ) | Adv. Proc. No. 12-2102 |
| Appellant, | ) | |
| | ) | |
| v. | ) | **Cause No. 2:23-cv-349-PPS** |
| | ) | |
| SOUTHLAKE NAUTILUS HEALTH & | ) | |
| RACQUET CLUB, INC., | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |

## OPINION AND ORDER

Jacqueline Sterling appeals a Bankruptcy Court Order that awarded her damages and attorney fees totaling roughly $110,000 for the contemptuous behavior of her creditor, Southlake Nautilus, a local health club. Southlake attempted to collect a debt against Sterling that had been extinguished in bankruptcy. Sterling believes she is entitled to a larger award. But because Bankruptcy Judge Ahler did not abuse his discretion in arriving at a damage and fee award, his decision must be affirmed.

**Background**

This case arises from a 2001 debt of approximately $500 in unpaid membership dues owed by Sterling to the Southlake Nautilus Health & Racquet Club, Inc. Shockingly, this rather paltry unpaid debt has spawned over *two decades* of litigation: there was an initial collection action in state court, followed by a bankruptcy proceeding, then a wrongful arrest and detention of Ms. Sterling, an adversary

1

proceeding in the bankruptcy court, an appeal to this court and then a reversal in the Seventh Circuit, which then led to another proceeding in bankruptcy court. It is this latter proceeding which is before me now.

Here are the details: Sterling evidently didn't pay her bill to Southlake which prompted Southlake to pursue a collection action against her in the Superior Court of Lake County, Indiana. Southlake obtained a default judgment against Sterling in February 2002, and over the course of the next decade, it aggressively sought to collect on that judgment.

In September 2009, Sterling filed a Chapter 7 bankruptcy. [Bankr. Case No. 09-24206.] A short while later, the Bankruptcy Noticing Center sent a notice to Southlake that Sterling had initiated the bankruptcy. Southlake did not send a copy of this notice to its attorneys at Austgen Kuiper & Associates, P.C. ("Austgen"), who represented Southlake in the Lake County collection case. Nor did the Lake County judiciary receive notice of Sterling's bankruptcy.

In December 2009, Southlake, through its attorneys at Austgen, filed a motion for proceedings supplemental in the Lake County case to enforce the 2002 judgment against Sterling. A month later, in January 2010, the bankruptcy court entered a Discharge Order that discharged Sterling's financial obligations, including to Southlake. The Bankruptcy Noticing Center sent a prompt letter to Southlake notifying it of the Discharge Order. At this critical juncture, Southlake did not inform its attorney (Austgen) or the Lake County judiciary of its receipt of the Discharge Order. But,

importantly, neither did Sterling, even though a local rule requires such notice. Here's what that rule says:

> Immediately upon the entry of an order for relief, give written notice of the bankruptcy to any court or other tribunal where an action or other proceeding is being maintained against the debtor, whether or not the matter has proceeded to final judgment, and to all the parties involved in any such action or proceeding.

N.D. Ind. L.R. B-4002-1(a)(2). On April 27, 2010, after Sterling failed to appear at a hearing on Southlake's motion for proceedings supplemental, the Lake County court, unaware of Sterling's bankruptcy case or the Discharge Order, issued a bench warrant for Sterling's arrest. That's when matters took a terrible turn.

About a year later, a police officer with the town of Dyer, Indiana stopped to assist Sterling with a flat tire. Upon learning of the outstanding April 2010 warrant for her arrest, the officer detained Sterling, and she ended up spending the weekend in jail. She was detained on Friday and Saturday night in a cell with more than 20 other women. They shared one open air toilet and did not have access to feminine hygiene products. On Sunday, the jail transferred Sterling to a different cell with a single cellmate.

Sterling's employer at the time, the Horseshoe Casino in Hammond, Indiana, suspended Sterling after her arrest. However, after her release, the Horseshoe Casino reinstated Sterling's employment later that same month. Sterling had to disclose her arrest to the Indiana Gaming Commission each year to renew her gaming license, though these disclosures did not prohibit the successful annual renewal of her license.

Following her arrest, Sterling first filed suit in state court to seek damages against Southlake, Austgen, and David Austgen (the head of Austgen) for their part in her March 2011 arrest in violation of the Discharge Order. Sterling's state court action was unsuccessful, so on June 25, 2012, she initiated an adversary proceeding in bankruptcy court against Southlake, David Austgen, and his law firm. [Adversary Proceeding No. 12-02102.] Sterling sought to hold all three in civil contempt. The bankruptcy court held a bench trial from November 12-13, 2014, granted defendants' motion for judgment on partial findings to dismiss David Austgen individually from the case, and ultimately entered judgment for Southlake and Austgen (the law firm) on August 25, 2016. [Adversary Proceeding No. 12-02102, DE 87.] Sterling appealed the judgment to this court, and the matter was assigned to Judge Van Bokkelen who affirmed the bankruptcy court on August 2, 2018. *See Sterling v. Southlake Nautilus Health and Racquet Club, Inc., et al.*, No. 2:16-CV-384, 2018 WL 3660058 (N.D. Ind. Aug. 2, 2018).

On appeal to the Seventh Circuit, Sterling challenged the district court's findings that both Southlake and Austgen lacked the knowledge necessary to be held in contempt for violating the Discharge Order issued pursuant to 11 U.S.C. § 524(a). The Seventh Circuit affirmed the district court's decision with respect to Austgen but reversed with respect to Southlake and held that Southlake, in pursuing its collection efforts after the debt had been discharged, was in contempt. *In re Sterling*, 933 F.3d 828 (7th Cir. 2019). In remanding, the Seventh Circuit issued a reminder to debtors (and their counsel) of the importance of compliance with Local Bankruptcy Rule B–4002–1(a)

4

and left "to the bankruptcy court's discretion whether to factor [Sterling's noncompliance with this rule] into the damages calculation." *Id*. at 836. So, the case was remanded to the bankruptcy court for a hearing on damages.

In the hearing on remand, Sterling sought damages for lost wages, emotional distress, false arrest, loss of reputation, and attorney fees. Southlake argued that Sterling was not entitled to any damages or, alternatively, that the bankruptcy court should reduce Sterling's damages and attorney fees because of her failure to comply with Local Bankruptcy Rule B–4002–1(a). Judge Ahler rejected the notion that a failure to comply with Rule B–4002–1(a) should prohibit any recovery, reasoning that such a result "could incentivize creditors to ignore a discharge order" and would "undermine the civil contempt finding against Southlake." [DE 4-2 at 16.[1]] But Judge Ahler commented that "this entire unfortunate occurrence may have been avoided had Sterling complied [with Rule B–4002–1(a)]." [*Id*.] On that basis, Judge Ahler split the baby assigning 50% fault to each side and thereby reducing Sterling's damages and attorney fees award by 50% to reflect "the role Sterling played in the resulting litigation." [*Id*. at 17.]

In particular, Judge Ahler found damages in the amount of $18,000 for the emotional distress Sterling endured by being wrongfully jailed for three days ($6,000 per day) plus $1,449 in lost wages. After applying the 50% apportionment, it resulted in

---

[1] DE 4 is the Bankruptcy Record filed with this case. This record includes Judge Ahler's October 3, 2023 Order that Sterling appeals in this case. I will cite to this record, including for citation to Judge Ahler's opinion, because it is comprehensive and the pages are numbered sequentially. The Court refers to the page numbers in the top right corner in blue that correspond to the docket entries for this appeal.

5

a total award of $9,724.50 in damages. Judge Ahler denied Sterling damages for loss of reputation and wrongful detention. Regarding loss of reputation, Judge Ahler held that Sterling had provided no evidence that her arrest and incarceration had impacted her reputation in an appreciable way and cited Sterling's reinstatement at work and renewal of her gaming license as evidence to the contrary. [*Id.* at 20.] Judge Ahler analyzed Sterling's wrongful detention through the lens of false arrest and held that Sterling failed to demonstrate a lack of probable cause. [*Id.* at 20–21.]

As for attorney fees, Judge Ahler awarded Sterling's lawyer the sum of $99,355. To repeat, this amount was arrived at after applying the 50% apportionment described above. In doing so, Judge Ahler struck certain of Sterling's requested attorney fees and denied Sterling's request for fees related to her unsuccessful attempt to pursue the violation of the Discharge Order in state court prior to initiating the present adversary proceeding. Judge Ahler reasoned that "fees incurred for initially bringing this case in the incorrect forum, should not be compensable." [*Id.* at 29.]

## Discussion

Appellate courts, as I sit in this instance, review a bankruptcy court's decision to impose sanctions for an abuse of discretion. *See In re Rimsat, Ltd.*, 212 F.3d 1039, 1046 (7th Cir. 2000). A district court will reverse a bankruptcy court's decision as an abuse of discretion only when the "decision is premised on an incorrect legal principle or a clearly erroneous factual finding, or when the record contains no evidence on which the court rationally could have relied." *In re Kmart Corp.*, 381 F.3d 709, 713 (7th Cir. 2004).

Importantly, this standard means that I do not necessarily need to agree with the bankruptcy judge's decision "so long as the decision is within the range of options from which one would expect a reasonable trial judge to select." *In re Radcliffe*, 390 B.R. 881, 888 (N.D. Ind. 2008).

Sterling brings a broadside attack on pretty much everything Judge Ahler did. Her arguments can be organized into several buckets: (1) the validity of the 50% apportionment; (2) attorney fees; (3) the damage award; and (4) costs. I'll take up each argument in turn below.

1. **50% Apportionment of Sterling's Damages and Attorney Fees**

Sterling's principal argument is that Judge Ahler erred in his 50% reduction (or apportionment) of Sterling's damages and attorney fees. Recall that Judge Ahler applied the 50% apportionment because Sterling's failure to follow Rule B–4002–1(a) contributed to her damages (mainly, the weekend in jail). Sterling asserts two primary arguments that Judge Ahler made an error of law in his application of the 50% apportionment: (1) that he applied the incorrect legal standard for contributory or comparative negligence, and (2) that he lacked authority to reduce the awarded attorney fees.

Bankruptcy courts have broad equitable powers and discretion to award damages for a violation of a discharge injunction. *See Badovick v. Greenspan (In re Greenspan),* No. 10-8019, 2011 WL 310703, at *5 (B.A.P. 6th Cir. Feb. 2, 2011). Section 524 of the Bankruptcy Code does not contain a specific provision regarding enforcement for

a violation of a discharge injunction issued pursuant to that Section. Instead, "bankruptcy courts invoke § 105(a), which grants bankruptcy courts broad equitable powers, to enforce the discharge injunction, using the mechanism of civil contempt action." *Laboy v. Firstbank Puerto Rico, et al. (In re Laboy)*, A.P. No. 09-00047, 2010 WL 427780, at *5 (Bankr. D.P.R. Feb. 2, 2010) (citation omitted). The Seventh Circuit previously held that Southlake's conduct violated § 524, so the existence of a violation of the discharge injunction is not at issue here. *See In re Sterling*, 933 F.3d. at 832–35.

Upon finding a willful violation of a discharge injunction, bankruptcy courts have exercised their broad equitable powers and discretion to award actual damages, damages for emotional distress, punitive damages, and attorney fees and costs. *See In re Wassem*, 456 B.R. 566, 572 (Bankr. M.D. Fla. 2009); *In re Greenspan*, 464 B.R. at *3–5. Some bankruptcy courts have exercised these same equitable powers and discretion to reduce the award of both damages and attorney fees where debtors failed to mitigate their damages. *See In re Mitchell*, 545 B.R. 209, 226-27 (Bankr. N.D. Ohio 2016) ("[D]ebtors have a duty to mitigate damages when faced with violations of the discharge injunction"); *In re Haltermon*, 592 B.R. 311 (Bankr. S.D. Ohio 2018).

Indeed, the Seventh Circuit in this same proceeding commented: "we note that this regrettable event could have been avoided had Sterling complied with Northern District of Indiana Local Bankruptcy Rule B-4002-1(a) . . . . We leave to the bankruptcy court's discretion whether to factor this into the damages calculation." *In re Sterling*, 933 F.3d at 836. This is simply another way of saying that, in the exercise of his discretion,

Judge Ahler could take the failure to mitigate damages into account. And following the Circuit's cue, that's precisely what Judge Ahler did here.

Sterling asserts that Judge Ahler erred as a matter of law in applying the "wrong standard of law to evaluate proximate cause" in considering Sterling's non-compliance with Rule B-4002-1(a) because "contributory or comparative negligence is based on actuality and not theoretical concerns." [DE 9 at 20–21.] But this is a *contempt* proceeding, not an ordinary negligence case. Cases like *In re Haltermon* and *In re Mitchell* prove that point. The bankruptcy court in *In re Mitchell* did not conclude that the creditor violated the discharge injunction but commented that the court would have declined to award damages and attorney fees because the debtor's lawyer failed to timely assert the protection of the discharge injunction in the relevant state court proceedings. 545 B.R. at 227–28. Similarly, in *In re Haltermon* the bankruptcy court reduced the requested attorney fees award because it held that the debtor's counsel failed to mitigate damages by not immediately notifying the court and opposing counsel in a state court proceeding of the existence of a discharge injunction. 592 B.R. at 321–24. In other words, just as the Seventh Circuit suggested in this very case, it is clear that bankruptcy courts have broad authority to reduce damages (and attorney fees) in contempt proceedings, and in doing so they are not bound by the typical standard for a finding of contributory negligence.

Sterling also argues that Judge Ahler premised his reduction of damages and attorney fees upon erroneous findings of fact and argued that even had Sterling

9

complied with Rule B-4002-1(a) it would have made no difference. But that is a factual finding that can only be reviewed for clear error. *See Wiese v. Cmty. Bank of Cent. Wis.*, 552 F.3d at 588. Sterling points to the testimony of Wanda Legett, the former chief administrative officer of the clerk's office in Lake Superior Court. While Legett did testify as to issues with docketing and record keeping in Lake Superior Court proceedings, I do not find Judge Ahler's conclusions regarding the potential effect of Sterling's compliance with Rule B-4002-1(a) to be clearly erroneous. Rule B-4002-1(a) exists for a reason: to provide state courts with notice of bankruptcy proceedings. In addition, Sterling's arguments about delays in state court documentation ignore that nearly a full year passed between the issuance of the warrant for Sterling's arrest and her actual arrest. I find it reasonable for Judge Ahler to conclude that Sterling's compliance with Rule B-4002-1(a) could have mitigated her damages by preventing her arrest.

Upon consideration of *In re Haltermon* and *In re Mitchell*, not to mention legal authority confirming that bankruptcy courts can decline to award *any* damages or attorney fees for the violation of a discharge order, *see e.g. In re Hardej*, 563 B.R. 855, 866–67 (Bankr. N.D. Ill. 2017), I find that Judge Ahler did not abuse his discretion in reducing Sterling's attorney fees and damages award by 50% for a failure to comply with the important notice provisions of Rule B-4002-1(a). While I may have placed more blame for this fiasco on Southlake if I were deciding the issue in the first instance, that doesn't make Judge Ahler's decision an abuse of discretion.

### 2. Attorney Fees Related to State Court Proceeding

Sterling also argues that she is entitled to attorney fees for the state court proceeding that she first initiated against Southlake, but ultimately lost, for a violation of the discharge injunction. This is a legal argument that I review *de novo*.

Sterling points me to *Texas State Teachers Association v. Garland Independent School District*, 489 U.S. 782, 109 S.Ct. 1486 (1989), but this case is not even close to being on point. In *Texas State Teachers Association*, the Supreme Court refined the definition of a "prevailing party" who is entitled to fee shifting pursuant to 42 U.S.C. § 1988. *Id.* at 790–93. Not only is § 1988 not relevant here, but the prevailing party in *Texas State Teachers Association* sought fees for prevailing on certain claims *in the same underlying suit*. By contrast, Sterling seeks attorney fees related to pursuit of a different lawsuit: her unsuccessful state court action. Sterling's situation is instead akin to *In re Cowan* in which the bankruptcy court denied a debtor's claims for attorney fees for defense of a state court action. 586 B.R. 337, 346 (Bankr. D. Idaho 2018) ("[T]he Court fails to understand Debtor's lawyer's decision to dispute the validity of the collection action in state court, as opposed to bankruptcy court . . . . [T]he Court declines to compensate him for his decision to litigate in state court.") I affirm Judge Ahler's decision to not award attorney fees for Sterling's unsuccessful state court action to enforce the discharge injunction.

### 3. Sterling's Challenges to the Amount Awarded

Having addressed the issue of apportionment of damages and attorney fees, I

will turn now to Sterling's arguments about specific categories of damages. The categories of relief available to her were actual damages, damages for emotional distress, punitive damages, and attorney fees and costs. *See In re Wassem*, 456 B.R. at 572. The purpose of these categories of damages is to provide remedial and compensatory relief to the party who suffered the consequences of a violation of a bankruptcy court's order. *See Romanucci & Blandin, LLC* v. Lempesis, No. 16 C 9710, 2017 WL 4401643, at *6 (Bankr. N.D. Ill. May 4, 2017).

    a. **Emotional Distress**

Sterling first argues that Judge Ahler erred in his award of $18,000 in damages for emotional distress ($6,000 for each day she spent in "debtor's prison"), which, subject to the 50% damage apportionment, resulted in a total award of $9,000. Sterling says this award is "unconscionable." But Sterling cites no case law to challenge Judge Ahler's calculation of emotional distress damages.

Judge Ahler relied upon *Goodson v. Goodson, et al., (In re Goodson)*, Case No. 17-41820, 2018 WL 722461 (Bankr. N.D. Ala. Feb. 5, 2018) to calculate Sterling's damages for emotional distress. In that case, a debtor spent four days in jail pursuant to a criminal contempt order even though the debtor had filed for bankruptcy and received an automatic stay. The court awarded $5,000 in damages for each night the debtor spent in jail. *Id*. at *13; *see also In re Bishop*, 296 B.R. 890, 897 (Bankr. S.D. Ga. 2003) (awarding $5,000 in damages for emotional distress that stemmed from the "serious threat of arrest."). Other bankruptcy judges have awarded far less in damages for emotional

distress caused by violations of bankruptcy protections, including those that resulted in jail time for a debtor. *See In re Valentine*, 611 B.R. 622, 652 (Bankr. E.D. Mo. 2020) (awarding a paltry $100 in damages for each night of incarceration). In short, the award of $9,000 in emotional distress in this case appears to be within the norm and entirely reasonable. It was not an abuse of discretion.

      b. **Damages to Reputation and Defamation**

Next, Sterling argues that Judge Ahler erred in denying her request for damages for a loss of reputation. [DE 9 at 23–26.] Judge Ahler concluded that Sterling "did not provide any evidence that the arrest impacted her reputation in any appreciable way." [DE 4-2 at 20.] On appeal, Sterling argues that the mere disclosure and explanation of her arrest and detention, such as through the gaming licensure process, entitles her to damages under a theory of *per se* defamation. [DE 9 at 23–26.]

Judge Ahler (and Southlake) view Sterling's claim for damages through the lens of damage to reputation, while Sterling views her claim through the lens of defamation. Sterling cites the case *Lovings v. Thomas*, 805 N.E.2d 442 (Ind. Ct. App. 2004) for the proposition that imputation of criminal conduct is defamation *per se*. Sterling argues that her disclosure and explanation of her arrest to state gaming boards and her employer impute criminal conduct and therefore entitle her to damages for defamation *per se*.

But this argument inverts the nature of a defamatory communication. Under Sterling's theory, Sterling, not Southlake, is the one making the purportedly *per se*

defamatory communications about herself when she discloses her arrest to gaming license boards and employers. Moreover, to be actionable, a defamatory *per se* statement cannot be true. *See, e.g.*, *Ratcliff v. Barnes*, 750 N.E.2d 433, 436 (Ind. Ct. App. 2001) ("In order to show that a defamatory communication is actionable, a plaintiff must prove that the communication is false."). Here, Sterling's statements to gaming license boards and employers were truthful: she was indeed arrested and detained pursuant to the state court contempt order.

Sterling also gets nowhere if her claim is analyzed through the lens of a loss of reputation. As recognized by Judge Ahler, "[d]amages for loss of reputation are only available in actions for libel, slander, abuse of process, malicious prosecution and third-party contract interference." *Grieves v. Greenwood*, 550 N.E.2d 334, 338 (Ind. Ct. App. 1990). Sterling does not address any of these theories of reputational damages and she provides no evidence to support them. In fact, after her arrest Sterling maintained her employment (after reinstatement) and successfully renewed her gaming license each year. The arrest did not cause her to lose her job or prohibit an annual renewal of her license. And whatever time off she lost from work was accounted for by Judge Ahler in his award of lost wages, which Sterling does not appeal. Nowhere in Sterling's briefing does she provide evidence that her arrest has prohibited her ability to seek employment in the gaming industry. Indeed, it appears from Sterling's briefing that she recently achieved licensure and employment in a new state. I concur with Judge Ahler's decision to deny Sterling's claim for reputational damages and find that he did not abuse his

discretion in that finding.

### c. **Damages for Wrongful Detention**

Sterling argues that she is also entitled to damages for "wrongful detention" or "false arrest." [DE 9 at 26–27.] At the outset, I'm not sure I see the point of trying to shoehorn what happened here into some independent legal theory. (The same could be said of her "defamation" claim addressed in the preceding section). Recall (again) that this is a contempt proceeding. The goal was to award Sterling damages for the harm that Southlake brought upon her by ignoring the discharge order.

Nevertheless, Judge Ahler analyzed Sterling's claim for "wrongful detention" as a claim for false arrest and determined that Sterling had not satisfied the requirement for detention without probable cause. [DE 4-2 at 21.] On appeal, Sterling vaguely asserts that "wrongful detention" is a separate cause of action than false arrest and seeks to cast her arrest as an arrest based on fabricated evidence. In support of her argument, Sterling cites *Hallom v. City of Chicago*, No. 1:18 CV 4856, 2019 WL 1762912 (N.D. Ill. Apr. 22, 2019). In *Hallom*, the court analyzed a motion to dismiss a 42 U.S.C. § 1983 action against the City of Chicago and three police officers for allegedly fabricating that the plaintiff pointed a gun at two officers. *Id*. at *1. The plaintiff was exonerated at trial and sought damages under a theory of wrongful pretrial detention. *Id*. at *2.

The elements of wrongful detention have not been explicitly articulated by the Seventh Circuit, but "[t]he consensus among district courts on the elements of an unlawful pretrial detention claim . . . is the following: defendant[s] (1) caused (2) a

seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." *Bahena v. Kennedy*, No. 17 CV 8532, 2021 WL 8153974, at *6 (N.D. Ill. Oct. 25, 2021) (internal citations omitted). Importantly, "probable cause defeats such a claim." *Id*. The same is true for Indiana law. *See Miller v. City of Anderson*, 777 N.E.2d 1100, 1104 (Ind. Ct. App. 2002) ("A defendant may be liable for false arrest when he or she arrests the plaintiff in the absence of probable cause to do so.") (internal citations omitted).

The warrant in this case *was* based on probable cause—Sterling failed to appear at the state court hearing which prompted a bench warrant to be issued. Therefore, there was no error on the part of Judge Ahler in not awarding separate damages for Sterling's wrongful detention or false arrest.

    d.  **Costs**

Finally, Sterling argues that Judge Ahler "refused" to award costs. [DE 9 at 30.] That doesn't strike me as a fair characterization of what happened. As best I can tell, Sterling never clearly defined for Judge Ahler what costs she was seeking. Based on her briefing here, it appears that Sterling seeks an award for costs of the filing fees associated with pursuing this case as an adversary proceeding in bankruptcy court and on appeal before this district court and the Seventh Circuit. [*Id*. at 31.]

In a bankruptcy proceeding, the "court *may* allow costs to the prevailing party except when a statute of the United States or these rules otherwise provides." Fed. R. Bankr. P. 7054(b)(1) (emphasis added). In contrast, Federal Rule of Civil Procedure 54(d)

provides for mandatory award of costs: "Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—*should* be allowed to the prevailing party." Fed.R.Civ.P. 54(d)(1) (emphasis added). However, the Seventh Circuit has applied the same presumptive cost shifting standard of Rule 54(d) to Bankruptcy Rule 7054(b). *See Mungo v. Taylor*, 355 F.3d 969, 978 (7th Cir. 2004) ("Although Bankruptcy Rule 7054 provides that the court *may* award the prevailing [party] costs, the courts have held that there is a rebuttable presumption that the prevailing party is entitled to costs.") (emphasis in original). As a result, "[g]enerally only misconduct by the prevailing party worthy of a penalty . . . or the losing party's inability to pay will suffice to justify denying costs." *Contreras v. City of Chicago*, 119 F.3d 1286, 1295 (7th Cir. 1997) (internal citation omitted).

     A district court's denial of costs to the prevailing party must be accompanied by an explanation of "good reasons" for the denial. *Mungo*, 355 F.3d at 979. An appellate court, as I sit in this case, reviews a lower court's decision to impose costs for an "abuse of discretion." *Id*. at 978. Sterling is correct that Judge Ahler did not explain the lack of an award of costs, but this appears to be because Sterling failed to specify the costs that she seeks. Sterling bears the initial burden of establishing that each documented cost that she seeks falls within the list of permissible costs in 28 U.S.C. § 1920 and to demonstrate that the costs were "reasonable and necessary." *Schwinn Plan Comm. v. Transamerica Ins. Fin. Corp. (In re Schwinn Bicycle Co.)*, 210 B.R. 764, 769 (Bankr. N.D. Ill. 1997). In both its briefing before this Court and its Fee Petition before the bankruptcy

court [Case No. 12-02102, DE 129; DE 4-3 at 32–43], Sterling failed to delineate the "costs" that she claims Judge Ahler did not award. Because Sterling has not provided proof of what costs were reasonable and necessary to this adversary proceeding, I am unable to award any costs in addition to the attorney fees that Sterling sought in her fee petition. *See In re Schwinn Bicycle Co.*, 210 B.R. at 769–72.

## Conclusion

Ms. Sterling should have never spent one moment in jail. That it happened at all is astonishing. Southlake acted in a brutish and clueless way by thumbing its nose at the bankruptcy process all to collect a $500-decade old debt. In order to address this kind of appalling behavior, bankruptcy courts are afforded wide discretion to award damages, and Judge Ahler exercised that discretion here. His award of $9,724.50 in damages and $99,355 in fees and was not an abuse of that discretion.

For the reasons set forth above, I AFFIRM Judge Ahler's Memorandum and Opinion [Adversary Proceeding No. 12-02102, DE 147] dated October 3, 2023.

SO ORDERED.

ENTERED: June 10, 2024.

/s/ Philip P. Simon
**PHILIP P. SIMON, JUDGE**
**UNITED STATES DISTRICT COURT**